IN THE

# SUPREME COURT OF TENNESSEE,

FOR THE

# MIDDLE DIVISION.

NASHVILLE . . . DECEMBER TERM, 1879.

JAMES H. AKIN *v.* JOHN T. BINGHAM *et als.*

**PARTNERS.** *Suit by. Injunction bond. Surety. Indemnity of surety. Agreement. Burden of proof.* One of two persons, late partners, who had united in a bill to enjoin the collection of a partnership debt, and in giving the injunction bond, procured the surety to the bond, and to indemnify him against any loss, agreed to transfer, and did afterward transfer, for his benefit, the balance due upon a note given to him by the surety for land, but subsequently authorized the surety to pay out of such balance a judgment against him as a prior encumbrance on the land, after which he became insolvent; the bill was dismissed, and the other partner paid the judgment rendered against them for the debt enjoined, and filed this bill to hold the surety liable for the indemnity. Held, that the transfer itself gave him no cause of action; that the burden of proof—the facts on which his equity rested being denied by the answer—is on him to show an agreement that the indemnity was to enure to his benefit; that representations of the copartner and surety in the nature of expressions of opinion, not of contract, nor intended to influence his action except in the way of persuasion, would not entitle him to relief; and that the payment of the

(317)

Akin v. Bingham.

alleged judgment, if made in good faith, would, probably, in any event, protect the surety, there being to that extent a failure of the original consideration of the note.

FROM MAURY.

Appeal from the Chancery Court at Columbia. WARD, Sp. Ch.

G. P. FRIERSON for complainant.

I. N. BARNETT for defendants.

COOPER, J., delivered the opinion of the court.

The complainant, James H. Akin, and N. W. Jones were partners in and prior to 1859, in which latter year the partnership was dissolved, Jones retaining most of the assets and agreeing to pay the debts. E. A. Hoge, one of their creditors, recovered judgments against them for about $600, on which executions were issued and levied on the personal effects of Jones. Thereupon a bill was filed in the name of Jones and Akin enjoining the collection of these judgments. The injunction bond bears date June 10, 1865, and is signed by both Jones and Akin as principals, and John T. Bingham as surety. Bingham bought a tract of land from Jones at the price of $9,000, for which he had given his note, but had made payments reducing the amount due to about $3,560. Before he would go upon the injunction bond there was an agreement between him and Jones that he was to be indemnified against the liability by means of this balance of debt. He had also become security on an-

other. injunction bond given by Jones upon a bill filed against Irwin and Stockard. There was also still due from Jones to his vendor of the land a balance of debt of about $2,445. On the 17th of June, 1865, the parties undertook to reduce the agreement between them to writing in the following form. James S. Bingham, a brother of John T. Bingham, executed an instrument by which, after reciting that Jones held his brother's note for the land, and was indebted to his vendor for the same land as above, that Jones and James H. Akin had filed a bill in chancery to be relieved from the Hoge judgments, and Jones had also filed a bill to be relieved of a judgment in favor of Irwin and Stockard for $275, and John T. Bingham was the surety on the injunction bonds in these cases, and after further reciting that Jones had transferred to him $3,560 of the note of John T. Bingham, the said James S. Bingham bound himself to pay off the balance due to Jones's vendor, and in the event Jones was relieved of the judgments enjoined, or should satisfy the same, to repay Jones $1,125, with interest, being the amount of said note of John T. Bingham so transferred, beyond the amount due to Jones's vendor. At the same time, and as part of the same transaction, John T. Bingham signed an instrument stating that the agreement was made for his benefit "so far as the land purchased is concerned," acknowledging that he was bound by the provisions of the agreement, and took the land subject to the lien thereon in favor of Jones's vendor. Both of these instruments were acknowledged and registered, and on

the 26th of September, 1865, Jones gave an order on John T. Bingham to pay out of the balance of purchase money due him and transferred as above, a judgment against him recovered by one Pinkard, and on the 30th of April, 1866, Bingham paid the judgments accordingly. It seems that Pinkard claimed to have acquired a lien for the satisfaction of this judgment on the land sold by Jones to Bingham by virtue of the levy of an execution which overrode Bingham's title.

Such proceedings were had in the case of *Jones and Akin* v. *Hoge* that the bill·was dismissed and judgment rendered in favor of Hoge against the complainants and Bingham for the debt enjoined, and Akin paid the recovery. On the 7th of September, 1868, he filed this bill to hold the Binghams liable for the amount he had thus paid, upon the ground that the transfer to James S. Bingham of the debt of John T. Bingham to Jones was to secure any judgment which might be rendered in favor of Hoge in the injunction suit, and upon the further ground that he only consented to join in the injunction bill upon the express condition, and upon the express representations of Bingham that the balance due from him on his land note should be held as a trust fund to pay any recovery that might be had by Hoge. The bill also insists that Pinkard's execution was never levied on the land, or, if levied, that the lien had been lost by laches. The facts on which the equity of the bill is made to rest are denied by the Binghams in their answer, and, in the opinion of the Chancellor, were

not sustained by the proof. He held that John T. Bingham was entitled to credit on his note for all the payments made by him previous to the transaction of the 17th of June, 1865, for the unpaid debt of Jones to his vendor, and for the amount paid on the Pinkard judgment, but that the complainant was entitled to subject the residue of the debt, if any, and he ordered an account accordingly. The complainant appealed by leave of the court before the account was taken.

The complainant being himself a principal in the Hoge judgments, in the bill enjoining their collection, and in the injunction bond, it is obvious that any transfer of property by his co-principal to indemnify the surety could not possibly inure to his benefit unless there was a positive agreement of the parties to that effect. It is equally obvious that any transfer by his co-principal of his own property to secure the creditor in the absence of a similar express agreement could not inure to the complainant's benefit, for his bill concedes what the proof shows, that there has never been any settlement of the partnership accounts, and he cannot be a creditor of his co-partner until this is done, and a balance found in his favor. The instruments of the 17th of June, 1865, do not on their face declare any such agreement. The complainant is not mentioned therein except as one of the principals in the injunction bill filed against Hoge. The first ground of relief assumed in the bill fails, therefore, necessarily, since it is rested only on the legal effect of the instruments.

If it be conceded that the transfer was made upon the express condition that so much of the note should be held to pay any recovery by Hoge, yet if the Pinkard execution, by virtue of its levy on the land, was a lien superior to the title acquired by Bingham under his purchase, there would be, to the extent of such lien debt, a failure of consideration, Jones being insolvent, and the security would be lost to all parties. And even if the alleged lien could, upon litigation, be shown to be without foundation, yet if Jones recognized it in good faith as valid, and sanctioned its payment, there would be equally a failure of consideration. The lien was seriously asserted by proceedings in court, and there is nothing in this record to show that either Jones or Bingham acted otherwise than under the honest belief that the judgment had to be paid to make the title to the land good.

The theory of the bill is that Jones had, as between him and complainant, become bound to pay the Hoge debt, and that the injunction bill was filed for his benefit, and upon an agreement by him, to which J. T. Bingham was a party, that complainant was to be indemnified by the pledge for that purpose of so much of the Bingham note. It does appear that the executions of Hoge were levied on the personal property of Jones to an amount sufficient to satisfy them, yet complainant testifies that Jones was then insolvent, and that complainant was afraid his property would be levied on. The bill, too, was based on matter which went to the merits of the Hoge debts, and, if

successful, would have inured to the benefit of complainant. It is certain, moreover, that no transfer was made until after the injunction bond was executed, and then without the presence of complainant. Under these circumstances, all the writing being against him, the bill and bond showing a primary liability on his part, and the instrument of transfer reciting the same fact and containing nothing in conflict therewith, the burden of proof is clearly upon the complainant.

The allegations of the bill are met by the denials of the answer, and the deposition of the complainant is equally met by the deposition of the defendant. The only evidence which supports the theory of the bill is that of Jones. His testimony is, in substance, that he told complainant that he had procured Bingham to go security, and had provided for the payment of the debt, if the suit should go against them, out of the money owed for the land; that Bingham was present and joined in the representations, and told complainant to sign the bond, that there was no risk about it. A single witness uncorroborated is probably not sufficient, either upon general principles or the peculiar nature of this case, to overcome the positive denials of the answer. But the witness only testifies to representation, not to a contract. The representations were honestly made, and true at the time.

There was no express condition such as the bill avers, nor were the representations of Bingham, as deposed to by Jones, more than expressions of opinion, without any element of a contract, or any intention to influence the complainant's action, except in the

way of persuasion; nor does the record show that they did otherwise influence him.

The Chancellor's decree will be affirmed with costs, and the cause may be remanded to take the account.